**CLIO CONVALESCENT CENTER, Plaintiff,**

v.

**MICHIGAN DEPARTMENT OF CONSUMER AND INDUSTRY SERVICES, Defendant.**

No. 99–71770.

United States District Court, E.D. Michigan, Southern Division.

July 26, 1999.

Andrew R. Rothman, for plaintiff.

Todd H. Cohan, R. Phillip Brown, Assistant Attorney Generals, State of Michigan, Lansing, MI, for defendant Michigan Department of Consumer and Industry Services.

Sheila Gaskell, Assistant United States Attorney, Detroit, MI, Jocelyn S. Beer, Assistant Regional Counsel, U.S. Dept. of Health & Human Services, Chicago, IL, for defendant Secretary of Health & Human Services.

## MEMORANDUM OPINION AND ORDER

O'MEARA, District Judge.

Before the court are the following motions: Plaintiff's motion to remand, the Secretary of Health and Human Services' ("Secretary") motion to intervene as a defendant, and the Secretary's and Defendant's motion to dissolve the preliminary injunction. The court heard oral argument June 11, 1999.

### BACKGROUND

Clio Convalescent Center ("Clio") is a state licensed nursing home in Clio, Michigan. In addition to being licensed by the Michigan Department of Consumer & Industry Services ("MDCIS") as a nursing home, it is certified as meeting the requirements for participation in the federal Medicare and state/federal Medicaid programs.

On March 10, 1999, the MDCIS concluded a survey of Clio, done in response to three complaints against the home, which found violations of a federal regulation. See 42 C.F.R. § 483.25(h). Based on these violations, the MDCIS planned to recommend to the Health Care Financing Agency ("HCFA") that civil money penalties ("CMPs") of $3050 per day be imposed for what it characterized as "immediate jeopardy" violations.

On March 12, 1999, Plaintiff filed a complaint in Genesee County Circuit Court alleging that when the MDCIS determined what remedies to recommend to the HCFA, the MDCIS implemented policies it had not promulgated pursuant to Michigan's Administrative Procedures Act ("MAPA"). On March 16, 1999, the state court issued an injunction preventing the MDCIS from taking any action with respect to the March 10, 1999 survey, including forwarding its remedy recommendation to the HCFA.

The Secretary removed this action April 9, 1999 pursuant to 28 U.S.C. § 1442(a)(1), which permits removal of an action brought against the United States "or any agency thereof ... sued in an official ... capacity for any act under color of such office."

### LAW AND ANALYSIS

#### A. Clio's Motion to Remand

Clio argues § 1442(a)(1) is inapplicable because it is suing a state agency for violations of state law and the Michigan Constitution.

■ There is no question a state can enter into an agreement with the Secretary to ensure compliance with federal certification requirements, see 42 U.S.C. § 1395aa, and that when it does, the state acts on behalf of the Secretary and the Secretary is "the real party in interest in administering the program established by the Act." Agreement at 5. In addition, the MDCIS has the power to investigate complaints to ascertain whether there has been a violation of federal law, see Mich. Comp.Laws Ann. § 333.21799a(4) (West 1992), and the power to "determine the seriousness" of the violations in order to recommend an appropriate remedy. See 42 C.F.R. § 488.404. Furthermore, the MDCIS is obligated to forward a completed "Statement of Deficiencies and Plan of Correction, HCFA Form 2567" to the HCFA "for each provider and supplier surveyed or resurveyed." Agreement at 3. The issue here is whether the MDCIS was required to promulgate the policy it implemented when it determined what remedies to recommend to the HCFA.

■ There is no indication the MDCIS applied anything but federal protocol, which it is required to apply, in determining what remedies to recommend to the HCFA. Clio points to no specific policy the state implemented that was not provided for in a federal regulation. While the MDCIS did use a grid and policy bulletin not specifically found in any federal material, it appears the grid merely sets forth the federal requirements in graph form, and the bulletin restates when certain remedies must be imposed as a matter of federal law. *See* 42 C.F.R. §§ 488.404, 488.408. Because the MDCIS was implementing federal regulations pursuant to its obligation under statutes, regulations, and/or contract, it was acting as HCFA's agent and removal was proper under § 1442(a)(1). *See Powers v. Department of Social Services,* 179 Mich.App. 416, 446 N.W.2d 505, 506 (1989).[1] Clio's motion to remand will be denied

### B. The Secretary's Motion to Intervene

As the MDCIS was acting as the Secretary's agent, the Secretary is the real party in interest and therefore, does not have to formally intervene. *See, e.g., Farkas v. Blue Cross & Blue Shield of Michigan,* 803 F.Supp. 87, 89 (E.D.Mich.1992), *aff'd,* 24 F.3d 853 (6th Cir.1994). However, the court will grant this motion.

### C. The Secretary's and the MDCIS' Motion to Dissolve Preliminary Injunction

■ A district court can dissolve or modify state court injunctions issued prior to removal. *See Resolution Trust Corp. v. Bayside Developers,* 43 F.3d 1230 (9th Cir. 1994); *see also* 28 U.S.C. § 1450. In determining whether to grant injunctive relief, the court should consider the following:

(1) the plaintiff's likelihood of success on the merits of the action;

(2) the irreparable harm to the plaintiff that could result if the court does not issue the injunction;

(3) whether the interests of the public will be served; and

(4) the possibility that the injunction would cause substantial harm to others.

*Hinckley v. Kelsey–Hayes Co.,* 866 F.Supp. 1034, 1038 (E.D.Mich.1994) (citing *Forry, Inc. v. Neundorfer, Inc.,* 837 F.2d 259, 262 (6th Cir.1988)) (other citations omitted).

■ Clio has demonstrated neither its likelihood of success on the merits nor the irreparable harm it could suffer absent this injunction. At the time of the state court injunction, there was the danger the HCFA would implement MDCIS' recommendations, resulting in severe financial harm that would have caused Clio to cease operations and forced it to discharge its employees and remove its residents. However, since then the HCFA has conducted its own survey and found no immediate jeopardy, rendering the MDCIS remedies moot. In fact, the HCFA had allowed Clio a "date certain" to correct the deficiencies and possibly escape having any remedy imposed as a result of the HCFA survey.[2] The motion to dissolve the preliminary injunction will be granted.

### ORDER

It is hereby **ORDERED** that Plaintiff's May 6, 1999 motion to remand is **DENIED.**

---

1. *Powers* held that Defendant was authorized to recoup overpayments to current Aid to Families with Dependent Children recipients "pursuant to departmental policies promulgated under federal authority," without promulgating such policies pursuant to the MAPA, because Defendant was "specifically authorized to effect such recoupment under federal law." *Powers,* 446 N.W.2d at 506.

2. Furthermore, even if the HCFA eventually should terminate Clio's provider agreement or assess a CMP of $3050 for each day, this may not be an irreparable injury. *See Manakee Prof'l Med. Transfer v. Shalala,* 71 F.3d 574, 581 (6th Cir.1995) ("[E]ven if the Secretary's actions were to force a health care provider out of business, the injuries are not necessarily 'irreparable,' considering the risk known to the health care provider when it enters the program.")

It is further **ORDERED** that the Secretary's May 19, 1999 motion to intervene is **GRANTED.**

It is further **ORDERED** that the Secretary's and MDCIS' April 16, 1999 motion to dissolve the preliminary injunction is **GRANTED.**